# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**FILED**

**January 17, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **E.F.**

**No. 19-0339** (Raleigh County 18-JA-206-B)

## MEMORANDUM DECISION

Petitioner Father J.F., by counsel Christopher D. Lefler, appeals the Circuit Court of Raleigh County's March 4, 2019, order terminating his parental rights to E.F.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parlsey, filed a response in support of the circuit court's order. The guardian ad litem, Vickie L. Hylton, filed a response on behalf of the child in support of the circuit court's order. Respondent Mother C.S. (mother of C.F.), by counsel Todd A. Kirby, filed a response in support of the circuit court's order. Respondent Mother A.B., by counsel Timothy P. Lupardus, also filed a response in support of the circuit court's order.[2] On appeal, petitioner argues that the circuit court erred in

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]A.B.'s child, C.L., was named in the DHHR's petition below and remained in the circuit court's case style throughout the proceedings. However, the DHHR did not seek termination of petitioner's parental or custodial rights to the child. As such, C.L. is not at issue in this appeal. We further note that petitioner's retention of his parental rights to C.L., despite the termination of his parental rights to E.F., is appropriate, under the limited circumstances of this case, given the thorough investigation of the issue below. According to the record, both the guardian ad litem and the DHHR "spoke[] at length" with C.L.'s mother and with C.L., both of whom indicated that they did not wish for petitioner's parental rights to C.L. to be terminated. The mother also indicated that she could protect the child because she exercises discretion in petitioner's visitation pursuant to a court order. Based on this evidence, the circuit court found that the termination of petitioner's parental rights to E.F. while leaving his rights to C.L. intact was "unusual, but on a sound basis as [C.L.] is being raised by his mother with additional protections." The permanency plan for C.L. is to remain in the custody of the nonabusing mother.

1

adjudicating him as an abusing parent, denying his request for a post-adjudicatory improvement period, and terminating his parental rights.[3]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In August of 2018, the DHHR filed an abuse and neglect petition alleging that ten-week-old E.F. had sustained injuries consistent with abusive head trauma while in petitioner's care. The DHHR alleged that the child was left in petitioner's sole care while the mother ran errands. Upon the mother's return, the child was in his swing and began having a seizure. The child was transported to Raleigh General Hospital ("RGH") via ambulance. The DHHR alleged that RGH staff reported that the child had a brain hemorrhage and that the treating physician stated the child had been shaken. A Child Protective Services ("CPS") worker interviewed both the mother and petitioner at RGH. According to the petition, the mother indicated that the child had been fine prior to her leaving him with petitioner to run errands. Petitioner denied that anything had happened and informed the CPS worker that he did not know how his son could have been injured. The child was subsequently transferred to Women and Children's Hospital in Charleston, West Virginia, where it was determined that he had suffered a left subdural hematoma that appeared to be less than seven days old. The DHHR alleged that the hospital reports also indicated that the child had another brain hemorrhage that appeared to be older and at a different stage of healing than the subdural hematoma. The DHHR further alleged that the disclosures that petitioner made to the CPS worker were inconsistent with the child's injuries. Following the petition's filing, petitioner waived his preliminary hearing.

---

[3]Additionally, petitioner assigns error to the circuit court's denial of his motion for visitation with the child. However, petitioner's argument section substantively ignores this alleged error. This is in clear contravention of Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, which provides:

> The brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error. The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

As petitioner's argument in support of this alleged error fails to comply with the applicable rule, it will not be addressed in this decision.

In October of 2018, the circuit court held an adjudicatory hearing. The circuit court heard testimony from a child abuse pediatric specialist, two CPS workers, and the child's mother. According to the medical testimony provided by the specialist, the child had been admitted to Women and Children's Hospital with a left subdural hematoma and seizures. The specialist testified that the subdural hematoma appeared to be less than a week old and related to trauma, but there was no history of trauma reported. The only note in the child's admission history was that the mother had been concerned that petitioner had bounced the child on his knee and could have done so too hard. The specialist testified that that degree of bouncing was inconsistent with the severity of the child's injury. The specialist also testified that tests revealed that the child had another, older hematoma that was at a different stage than the left subdural hematoma at issue. However, the specialist was unable, with certainty, to determine when or how the older hematoma was caused. The specialist further testified that a "differential diagnosis," including testing, was completed to rule out any differential causes of the child's injuries or metabolic disorders. This testing was sent to the Mayo Clinic and confirmed to be negative. The specialist further testified that it was her medical opinion that the left subdural hematoma was a result of abusive head trauma. Based on the evidence presented, the circuit court found that the child sustained his injury "during the thirty to forty-five minute window of time that [petitioner] had exclusive care and control of the child," and the child had exhibited no symptoms prior to that period of time. The circuit court further found that "no other theory, either medically or by observation of lay witnesses, [could] be advanced to explain [the injury] other than that the injury occurred during that time." As such, the circuit court found petitioner to be an abusing parent. Thereafter, petitioner moved for a post-adjudicatory improvement period.

In December of 2018, the circuit court held a hearing on petitioner's motions for a post-adjudicatory improvement period and visitation with the child. The DHHR, the guardian, and the child's mother opposed the motions. The circuit court found that petitioner failed to acknowledge any wrongdoing and that "it [was] difficult, perhaps impossible, to shape and form . . . a rehabilitation plan . . . for a parent who does not recognize that there are issues to be addressed." Based on this evidence, the circuit court denied petitioner's motion for a post-adjudicatory improvement period. The circuit court also considered petitioner's motion for visitation with the child. The circuit court found that petitioner's visitation with the child was at the discretion of the DHHR and there had been no showing of an abuse of discretion given the extent of the child's injuries. Ultimately, the circuit court denied petitioner's motion for visitation.

In February of 2019, the circuit court held a dispositional hearing. The circuit court found that the evidence clearly established that "injuries to [the child] were substantial, severe and unexplained and at the same time were non-accidental, and suffered while [the child] was in the care and custody of [petitioner]." The circuit court further found that the severity of the child's injuries showed "a low, if any, prospect for improvement" by petitioner. Accordingly, the circuit court terminated petitioner's parental rights.[4] It is from the dispositional order that petitioner appeals.

---

[4]According to respondents, the permanency plan for the child is to remain in the custody of his mother.

3

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

On appeal, petitioner first alleges that the circuit court erred in adjudicating him as an abusing parent based upon insufficient evidence that he caused the child's injuries. Specifically, petitioner argues that the evidence presented at adjudication was contradictory to the circuit court's findings. Petitioner asserts that the medical testimony established that the child's injuries had occurred sometime within a seven-day period. Petitioner argues that this is inconsistent with the circuit court's conclusion that the injury had occurred during the thirty to forty-five minutes that petitioner was alone with the child and that there was no other explanation. Upon our review, however, we do not find petitioner's arguments to be persuasive.

We have previously noted as follows:

> At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. . . . The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*In re F.S.*, 233 W. Va. 538, 544, 759 S.E.2d 769, 775 (2014). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Id.* at 546, 759 S.E.2d at 777 (citing *Brown v. Gobble*, 196 W. Va. 559, 564, 474 S.E.2d 489, 494 (1996)). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id.* at 546, 759 S.E.2d at 777 (quoting *Cramer v. W. Va. Dep't of Highways*, 180 W. Va. 97, 99 n.1, 375 S.E.2d 568, 570 n.1 (1988)). Pursuant to West Virginia Code § 49-1-201, an abused child is one whose health or welfare is harmed or threatened by "[a] parent . . .

4

who knowingly or intentionally inflicts . . . physical injury . . . upon the child or another child in the home."

Having reviewed the record, we find that sufficient evidence existed to adjudicate petitioner as an abusing parent. The medical testimony of the child abuse pediatric specialist clearly established that the child suffered a non-accidental, left subdural hematoma consistent with abusive head trauma. The medical testimony further established that the hematoma was less than seven days old at the time it was discovered. Petitioner argues the medical testimony is inconsistent with the circuit court's finding that the child's injury occurred during the window of time that petitioner had exclusive care of the child. While petitioner focuses on the lack of markings found on the child and the medical expert's inability to determine when the second, older hematoma had occurred, petitioner fails to acknowledge that all of the evidence in the case supports this finding. The only other possible explanation alluded to in the record came from the child's mother, who expressed concern that petitioner may have bounced the child too hard on his knee while burping him. However, the medical testimony clearly established that "that degree of bouncing the baby is not consistent with the severity of the injury." Further, the mother's testimony clearly established that the child had exhibited no symptoms of the injury prior to her return from leaving him in petitioner's exclusive care. Accordingly, we agree with the circuit court's conclusion that sufficient evidence existed to show the child suffered injuries caused by petitioner while in petitioner's exclusive care. Based on the evidence presented, we find that the circuit court properly adjudicated petitioner as an abusing parent.

Petitioner next argues that the circuit court erred in denying his motion for a post-adjudicatory improvement period. Specifically, petitioner argues that, despite his continued denial of injuring the child, he demonstrated by clear and convincing evidence, that he was willing and could successfully participate in, and complete, an improvement period. We find, however, that petitioner is entitled to no relief due to his failure to acknowledge the abuse.

West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the miscreant parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (quoting *In re Emily,* 208 W. Va. 325, 344, 540 S.E.2d 542, 551 (2000)). However,

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Although petitioner asserts in his brief that he

5

was willing to participate in an improvement period, he continued to deny that he injured his child. Because the record is void of any evidence that petitioner acknowledged the truth of the basic allegation that he caused his child's injuries, granting him an improvement period would have been futile. As such, we find no error in the circuit court's decision to deny petitioner a post-adjudicatory improvement period.

Lastly, petitioner argues that the circuit court erred in terminating his parental rights to the child because the DHHR sought no termination of his parental rights to an older child, C.L., who is not at issue on appeal. However, petitioner fails to appreciate that an absence of allegations to one child does not absolve him of the allegations concerning another child. While the testimony provided by a CPS worker clearly established that the DHHR did not believe that petitioner's older child had been abused or neglected by petitioner, the same could not be said for the child at issue. Accordingly, we find petitioner's argument to be unpersuasive.

West Virginia Code § 49-4-604(b)(6) provides that the circuit court may terminate a parent's parental rights upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and when necessary for the child's welfare. West Virginia Code § 49-4-604(c)(5) provides that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when "[t]he abusing parent . . . [has] repeatedly or seriously injured the child physically or emotionally . . . and the degree of family stress and the potential for further abuse and neglect are so great as to preclude the use of resources to mitigate or resolve family problems." In this case, the circuit court found that the child suffered injuries that "were substantial, severe[,] and unexplained and at the same time were non-accidental" while in petitioner's care. Based on the foregoing, it is clear that there was no reasonable likelihood that petitioner could correct the conditions of abuse in the near future due to his physical abuse of the child.

Similarly, though petitioner argues that it was error to terminate his parental rights to the child without first employing a less-restrictive disposition, such as terminating his custodial rights, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As reasoned above, the circuit court's finding that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future is fully supported by the record. Moreover, we have held that

> "[p]arental rights may be terminated where there is clear and convincing evidence that the infant child has suffered extensive physical abuse while in the

6

custody of his or her parents, and there is no reasonable likelihood that the conditions of abuse can be substantially corrected because the perpetrator of the abuse has not been identified and the parents, even in the face of knowledge of the abuse, have taken no action to identify the abuser." Syllabus Point 3, *In re Jeffrey R.L.,* 190 W.Va. 24, 435 S.E.2d 162 (1993).

*In re Harley C.*, 203 W. Va. 594, 509 S.E.2d 875 (1998). The circuit court found that the child had suffered severe physical abuse while in petitioner's custody; yet, the perpetrator remained unidentified throughout the proceedings. Accordingly, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its March 4, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**:  January 17, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison